UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| OAKLEY ENGESSER,<br><br>     Plaintiff,<br><br> vs.<br><br>TROOPER EDWARD FOX, of the South Dakota Highway Patrol and TROOPER FOX'S SUPERVISOR MICHAEL KAYRAS, both in their official capacity and individually; MEADE COUNTY STATES ATTORNEY JENNIFER UTTER; MEADE COUNTY STATES ATTORNEY GORDON SWANSON; MEADE COUNTY ASSISTANT STATES ATTORNEY AMBER RICHEY; MEADE COUNTY; and the STATE OF SOUTH DAKOTA,<br><br>     Defendants. | CIV. 15-5044-JLV<br><br><br><br><br>ORDER |

## INTRODUCTION

Plaintiff Oakley Engesser sues the above-captioned defendants alleging various claims under 42 U.S.C. § 1983 as well as claims under South Dakota state law pursuant to the court's supplemental jurisdiction under 28 U.S.C. § 1367.   See Docket 15 at pp. 20-35.   Mr. Engesser asserts his civil rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments of the United States Constitution were violated.   Id. at 34.

Plaintiff's complaint contains seven substantive counts and an eighth count requesting damages.   Id. at 20-35.   Defendants Trooper Edward Fox and the State of South Dakota ("State") filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).   (Docket 18).   Defendant Michael Kayras filed a Rule 12(b)(6)

motion to dismiss on the same grounds as those asserted by Trooper Fox.

(Docket 29).   Defendants Jennifer Utter, Gordon Swanson, Amber Richey and

Meade County filed a joint Rule 12(b)(6) motion to dismiss and motion to strike.

(Docket 20).   Mr. Engesser resists in part defendants' motions.   (Dockets 25, 27

& 36).   For purposes of judicial economy, the court resolves all three motions

together.

### FACTS

> In 2001, a jury convicted Oakley "Bernie" Engesser of vehicular homicide and two counts of vehicular battery.   The sole issue at the trial was whether Engesser or the deceased, Dorothy Finley, was driving her Corvette when it crashed into a minivan on Interstate 90. Neither Engesser nor Finley was wearing a seatbelt and both had been drinking alcoholic beverages. The Corvette was going approximately 112 miles per hour when it slammed into the back of the minivan, spun off the road, and rolled several times before coming to rest on its roof in the median. . . . No witness at trial testified to seeing the driver of the Corvette.   Engesser was thrown from the car, landing face down in the median.   Multiple witnesses at trial placed him between five and ten feet from the driver's side of the Corvette. Engesser was unconscious and suffered a gash to the right side of his head.   Finley was trapped in the car on the passenger side underneath the passenger seat, her body in line with the seat. The upper part of Finley's body was lying over the top of the seat. She was facing the ground.   Her feet were underneath the dash. Her face was pointing toward the driver's side.   The passenger side was crushed and the window shattered, but the roof and front windshield were intact.   Finley was pronounced dead at the scene.

Engesser v. Young, 856 N.W.2d 471, 473 (S.D. 2014) (some internal quotation

marks and citations omitted); see also Docket 15 at ¶¶ 63-65.

Because the procedural history and factual circumstances underlying Mr.

Engesser's claims are well documented in prior judicial opinions and in plaintiff's

amended complaint, additional recitation of salient facts is included in the discussion section of the order.

## DISCUSSION

### I.    Rule 12(b)(6) Motion to Dismiss Standard

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations, quotation marks and brackets omitted).   The "plausibility standard" at the pleading stage requires a showing greater than the mere possibility of misconduct yet less than the probability of misconduct.   Id. at 556-58.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570) (other internal citation omitted).   The Court in Iqbal expounded on the "plausibility standard" articulated in Twombly:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is

3

plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.   Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " . . .

[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.   But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

556 U.S. at 678-79 (internal citations omitted).

"In analyzing a 12(b)(6) motion, this court assumes all factual allegations in the complaint are true, but the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal."   Taxi Connection v. Dakota, Minnesota & E. R.R. Corp., 513 F.3d 823, 826 (8th Cir. 2008) (internal quotation marks omitted).   While the court must accept plaintiff's "factual allegations . . . [it] need not accept as true [his] legal conclusions even if they are cast in the form of factual allegations . . . ." Ashley v. U.S. Department of Interior, 408 F.3d 997, 1000 (8th Cir. 2005)

(internal citations and quotation marks omitted).   "A motion to dismiss should be granted if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."   Id.; see also Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982).   "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate."   Benton v. Merrill Lynch & Co., Inc., 524 F.3d 866, 870 (8th Cir. 2008).

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."   Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).   The court can consider matters in the public record when resolving a Rule 12(b)(6) motion to dismiss.   See Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); see also Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (noting courts can consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint") (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)); Vacanti v. Sunset Fin. Servs., Inc., No. 8:08CV436, 2009 WL 792387, at *3 (D. Neb. Mar. 23, 2009) (noting "documents necessarily embraced by the complaint are not considered to be matters outside the pleading") (internal quotation marks and citations omitted).

5

The court denies Ms. Utter's, Mr. Swanson's, Ms. Richey's and Meade County's request to strike the "procedural history" portion of Mr. Engesser's complaint.   (Docket 21 at p. 4).   The "procedural history" section of Mr. Engesser's amended complaint is important.   The circumstances forming the basis for his claims have been in various stages of criminal and civil litigation for over fifteen years and have been the subject of several state and federal judicial opinions providing dispositive resolutions for many issues relating to Mr. Engesser's case.   See State v. Engesser, 661 N.W.2d 739 (S.D. 2003) ("Engesser CR."); Engesser v. Dooley, 457 F.3d 731 (8th Cir. 2006) ("Engesser 2006"); Engesser v. Dooley, 759 N.W.2d 309, 314 (S.D. 2008) ("Engesser 2008"); Engesser v. Dooley, 823 F. Supp. 2d 910, 913 (D.S.D. 2011), rev'd and remanded, 686 F.3d 928 (8th Cir. 2012) ("Engesser 2011"); Engesser v. Dooley, 686 F.3d 928, 934 (8th Cir. 2012) ("Engesser 2012"); Engesser v. Young, 856 N.W.2d 471, 473 (S.D. 2014) ("Engesser 2014").   The prior opinions are referenced in the amended complaint and are also part of the public record.   See Docket 15 at pp. 17-20.   The court takes judicial notice of the opinions.

## II.   Plaintiff's Substantive Claims

### A.   Synopsis

Plaintiff's amended complaint contains seven substantive counts against seven defendants.   Count one alleges five theories of § 1983 liability against all seven defendants: (1) malicious prosecution; (2) false arrest; (3) use of unreliable and fraudulent investigative techniques; (4) procurement of unreliable and

fabricated evidence; and (5) wrongful conviction and imprisonment.   Id. at 20.
In count two, plaintiff alleges a § 1983 conspiracy claim against all defendants
but the State.   Id. at 23.   In count three, plaintiff alleges a § 1983 claim for
oppression of exculpatory evidence against all defendants but the State.   Id. at
25.   In count four, plaintiff alleges a § 1983 claim for unconstitutional policies,
practices and customs against all defendants but the State.   Id. at 26-30.   In
count five, plaintiff alleges a state law claim for negligence resulting in wrongful
incarceration and continued detention against all defendants.   Id. at 30.   In
count six, plaintiff asserts a state law claim for false arrest against all
defendants.   Id. at 31.   In count seven, plaintiff asserts a state law claim for
malicious prosecution against all defendants.   Id. at 32.

Plaintiff's amended complaint is not a model of clarity under Fed. R. Civ. P.
8.   In addition to plaintiff's subsequent clarifications regarding abandoned
claims and the capacity in which certain defendants are being sued, plaintiff
"adopts by reference all prior and subsequent paragraphs of this complaint" into
every count of the complaint whether those paragraphs are applicable or not.
See, e.g., id. at ¶ 77, 98 & 105.   Plaintiff's pleading practice effectively turns the
amended complaint into 35 pages of discrete allegations in which the plaintiff
frequently only identifies the applicable opposing party collectively as
"defendants," obscuring which claims apply to which defendants.   Further, in
counts 2-7, plaintiff lists "South Dakota Highway Patrol" as a named defendant
despite failing to identify it as a party in the amended complaint.   Id. at 1-2.

7

The lack of clarity in the amended complaint complicates the court's task of parsing the pleading for purposes of resolving defendants' motions to dismiss.

### B.   Legal Issues Common to Multiple Claims or Defendants

#### 1.   Statute of Limitations

Defendants make various statutes of limitation arguments asserting Mr. Engesser's § 1983 claims are time barred.   In <u>Heck v. Humphrey</u>, the Supreme Court held:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, *declared invalid by a state tribunal authorized to make such determination*, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. 477, 486-87 (1994) (emphasis added).

> The <u>Heck</u> Court further instructs:

> A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.   Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

<u>Id.</u> at 487 (emphasis in original).

Defendants argue Mr. Engesser did not receive a favorable termination of his underlying criminal conviction.   As a result, the time within which he could bring his § 1983 claims was not tolled under <u>Heck</u> and the applicable statutes of

limitation have run and his claims are time barred.   (Dockets 34 at pp. 11-13 & 21).   In <u>Engesser 2014</u>, the South Dakota Supreme Court upheld the state circuit court's grant of Mr. Engesser's writ of habeas corpus and order for a new trial under SDCL § 21-27-5.1(1).   856 N.W.2d at 484.   In reaching this decision, the Court "conclude[d] there is substantial evidence to support the circuit court's conclusion that Engesser established by clear and convincing evidence that no reasonable juror would have found him guilty of the underlying offense."   <u>Id.</u>   Following the Supreme Court's decision, South Dakota Attorney General Marty Jackley announced "the State does not intend to move forward with a second trial.   The State does reserve the right to evaluate any further evidence that may surface regarding any potential future action."   (Docket 26-1).

Notwithstanding Attorney General Jackley's exercise of prosecutorial discretion, Mr. Engesser received a favorable termination of his underlying criminal case on November 12, 2014, when the South Dakota Supreme Court upheld the circuit court's grant of his writ of habeas corpus.   The South Dakota Supreme Court's opinion speaks for itself: "the evidence offered in [Mr.] Engesser's trial that he was the driver was neither compelling nor substantial. And his newly discovered eyewitness testimony presents reliable proof, along with all the evidence, to conclude that no reasonable fact finder would have found [Mr.] Engesser guilty of the offenses charged against him."   <u>Engesser 2014</u>, 856 N.W.2d at 484 n.4 (citing SDCL § 21-27-5.1(1)).   Mr. Engesser

9

satisfied Heck's favorable termination requirement.   Except for Mr. Engesser's false arrest claims, which he has abandoned, his surviving § 1983 claims imply the invalidity of his underlying conviction, so they did not accrue until November 12, 2014, when the South Dakota Supreme Court invalidated his conviction. See Heck, 512 U.S. at 489-90 ("Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor . . . so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.).

### 2.   Sovereign Immunity and the Eleventh Amendment

"The Eleventh Amendment generally bars suits for damages against a state or state officials in their official capacities unless the state waives its sovereign immunity."   Christensen v. Quinn, 45 F. Supp. 3d 1043, 1059 (D.S.D. 2014), reconsideration denied, Civ. No. 10-4128, 2014 WL 6471378 (D.S.D. Nov. 18, 2014) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)). "Immunity from suit is a question of law for the court, not a question of fact for a jury to decide."   Id. at 1059 (citing Lopez v. Mendez, 432 F.3d 829, 835 (8th Cir. 2005)).

Mr. Engesser asserts Trooper Fox and Mr. Kayras "had insurance coverage through the Highway Patrol's participation in a risk-sharing pool known as the South Dakota Public Assurance Alliance [("SDPAA")]."   (Docket 25 at p. 12). The SDPAA is another name for South Dakota's required self-insurance known

as the public entity pool for liability ("PEPL").   See Goddard v. City of Deadwood, No. CIV. 09-5069, 2011 WL 4549171, at *11 (D.S.D. June 3, 2011), report and recommendation adopted, No. CIV. 09-5069, 2011 WL 4549158 (D.S.D. Sept. 29, 2011), aff'd sub nom. Goddard v. S. Dakota Pub. Assur. All., 687 F.3d 965 (8th Cir. 2012) (citing South Dakota Public Entity Pool for Liability v. Winger, 566 N.W.2d 125, 126 (S.D. 1997)).

At the outset, the court notes Mr. Engesser did not respond to the State's argument that it has not waived its sovereign immunity.   In his response to Trooper Fox's and Mr. Kayras' motion to dismiss, Mr. Engesser indicated he was not suing them in their official capacities in his § 1983 claims.   See Docket 25 at p. 3; see infra Part I.B.3.   "A suit against a public employee in his or her official capacity is merely a suit against the public employer."   Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)).   In light of Mr. Engesser's lack of a response and concession concerning his official capacity claims against Trooper Fox and Mr. Kayras, the court finds he has abandoned his claims against the State.

"Furthermore, neither a state nor its officials acting in their official capacities are 'persons' who may be sued for money damages under § 1983." Christensen, 45 F. Supp. 3d at 1059 (citing Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 617 (2002)).   Plaintiff seeks only money damages in his amended complaint.   (Docket 15 at pp. 34-35).   Finally, "respondeat superior or vicarious liability will not attach under § 1983."   Rutan v. State of S.

11

Dakota, No. CIV. 05-4070, 2005 WL 1398596, at *3 (D.S.D. June 14, 2005)

(citing Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001)).   The

court dismisses Mr. Engesser's § 1983 claims against the State.

The court will not dismiss Mr. Engesser's individual capacity § 1983

claims against Trooper Fox and Mr. Kayras on the basis of sovereign immunity.

The South Dakota Supreme Court acknowledged:

> Under [its] decision in Request for Advisory Opinion, 379 N.W.2d
> 822 (S.D. 1985), PEPL would not qualify as liability insurance to
> waive sovereign immunity under SDCL 21–32–16; therefore, SDCL
> 21–32–17 purports to grant absolute and complete immunity.
> However, under the 1991 amendment to SDCL 21–32A–2, PEPL
> would represent an effective waiver of sovereign immunity as a
> "risk-sharing pool."

Kyllo v. Panzer, 535 N.W.2d 896, 900 n.7 (S.D. 1995).

"Under the current statutory scheme, unless a claim falls within PEPL

fund coverage, the doctrine of sovereign immunity applies to abrogate that

claim."   Id. at 900.   "The PEPL fund provides no payment for, among other

things, non-economic damages, including, but not limited to, damages for pain,

suffering, inconvenience, physical impairment, disfigurement, loss of society and

companionship, and hedonic damages."   Id. (internal quotation marks and

brackets omitted).

In Kyllo, the South Dakota Supreme held:

> The common law of negligence existed well before the South Dakota
> Constitution, as did employees' personal liability for their wrongful
> conduct.   The legislature does not have the authority to wholly
> abrogate such common-law actions guaranteed by the constitution
> .   . . . It therefore can impose only reasonable restrictions that do
> not infringe on these protected rights. . . . Considering the history of

12

> sovereign immunity, the common law of negligence and the South
> Dakota Constitution, we agree that SDCL 21–32–17 and 21–32A–2
> are unconstitutional so far as they extend sovereign immunity to
> state employees performing ministerial functions.

Id. at 903 (citations omitted).

At this juncture, the court is unaware whether Trooper Fox and Mr. Kayras participated in the PEPL fund and, if so, what the terms of the agreement were. If these defendants did participate in the PEPL fund, sovereign immunity has been waived to the extent provided in the agreement.   This information can be readily obtained in discovery and, if it is determined neither defendant participated in the PEPL fund, it is the proper subject of a defense motion for summary judgment.   The court's finding is buttressed by plaintiff's many allegations of bad faith against the defendants, which the court must accept as true.   Under South Dakota's Constitution and common law, if sovereign immunity does not extend to a state employee negligently performing a ministerial function, see Kyllo, 535 N.W.2d at 903, it does not extend to a state employee acting in bad faith.   Cf. B.W. v. Meade Cty., 534 N.W.2d 595, 598 (S.D. 1995) (discussing concepts of negligence and good faith in resolving a statutory immunity issue under SDCL § 26-8A-14)).   Defendants' motions to dismiss on this basis are denied.

### 3.   Trooper Fox and Mr. Kayras

Mr. Engesser clarified that his state law claims are brought against Trooper Fox in his official capacity and his § 1983 claims are brought against Trooper Fox in his individual capacity.   (Docket 25 at p. 3) ("The only claims

against Trooper Fox in his official capacity are common law tort claims.   Plaintiff concedes that a [§] 1983 cause of action may not be brought against Trooper Fox in his official capacity.").   The court applies Mr. Engesser's clarification to his claims against Michael Kayras as well.   See Docket 36 (incorporating plaintiff's response to Trooper Fox's and the State's motion to dismiss into plaintiff's response to Mr. Kayras' motion).

With regard to Mr. Kayras, Mr. Engesser sued him because he was Trooper Fox's supervisor.   See Docket 15 at ¶ 3.   "[A] supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights."   Burris v. Quorum Court of Lincoln Cty., Arkansas, No. 5:07-CV-087, 2008 WL 4820563, at *8 (E.D. Ark. Nov. 4, 2008) (internal quotation marks omitted) (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996)).

To demonstrate a supervisor violated a plaintiff's constitutional rights by failing to supervise, a plaintiff must show that the supervisor "(1) Received notice of a pattern of unconstitutional acts committed by subordinates; (2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) Failed to take sufficient remedial action; and (4) That such failure proximately caused injury [to the plaintiff]."   Id. (internal quotation marks omitted) (quoting Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997)).   "The plaintiff must demonstrate that the supervisor was deliberately indifferent to or

14

tacitly authorized the offending acts. . . . This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." Andrews, 98 F.3d at 1078 (citations omitted). Count four of plaintiff's amended complaint most closely alleges a failure to supervise claim against Mr. Kayras. See Docket 15 at pp. 26-30. The court finds Mr. Engesser stated a plausible claim for § 1983 supervisor liability against Mr. Kayras.

### 4. Meade County Defendants

Mr. Engesser clarified he is not suing Ms. Utter, Mr. Swanson or Ms. Richey in their individual capacities. (Docket 27 at p. 3) ("As [these defendants] were not sued in their individual capacity, this point is moot."). The court agrees. See Johnson, 172 F.3d at 535. The court finds Mr. Engesser did not sue Ms. Utter, Mr. Swanson or Ms. Richey in their individual capacities—only in their official capacities. The court need not dismiss Mr. Engesser's individual capacity claims against these defendants because no such claims were brought. Because "[a] suit against a public employee in his or her official capacity is merely a suit against the public employer," id., Mr. Engesser's claims against Ms. Utter, Mr. Swanson and Ms. Richey are claims against Meade County.

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." Connick v. Thompson, 563 U.S. 51, 60-61 (2011) (quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978)). "[I]n other

15

words, a municipality cannot be held liable under § 1983 on a *respondeat*

*superior* theory." Monell, 436 U.S. at 691 (emphasis in original). "Official

municipal policy includes the decisions of a government's lawmakers, the acts of

its policymaking officials, and practices so persistent and widespread as to

practically have the force of law. . . . These are actions for which the municipality

is actually responsible." Connick, 563 U.S. at 61 (internal quotation marks,

citations and brackets omitted).

The Connick Court articulated the liability standard for a municipality as

follows:

> In limited circumstances, a local government's decision not to train
> certain employees about their legal duty to avoid violating citizens'
> rights may rise to the level of an official government policy for
> purposes of § 1983. A municipality's culpability for a deprivation of
> rights is at its most tenuous where a claim turns on a failure to
> train. See Oklahoma City v. Tuttle, 471 U.S. 808, 822-823 (1985)
> (plurality opinion) ("A policy of 'inadequate training is far more
> nebulous, and a good deal further removed from the constitutional
> violation, than was the policy in Monell"). To satisfy the statute, a
> municipality's failure to train its employees in a relevant respect
> must amount to "deliberate indifference to the rights of persons with
> whom the [untrained employees] come into contact." City of
> Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). Only then can
> such a shortcoming be properly thought of as a city "policy or
> custom" that is actionable under § 1983.
>
> Deliberate indifference is a stringent standard of fault, requiring
> proof that a municipal actor disregarded a known or obvious
> consequence of his action. . . . A pattern of similar constitutional
> violations by untrained employees is ordinarily necessary to
> demonstrate deliberate indifference for purposes of failure to train.

Id. at 61-62 (some internal quotation marks, citations and brackets omitted).

At issue in Connick was whether a municipality could be held liable based on a failure to train prosecutors on their duties under Brady v. Maryland, 373 U.S. 83 (1963).   The Court reasoned "[f]ailure to train prosecutors in their Brady obligations does not fall within the narrow range of Canton's hypothesized single-incident liability."   Id. at 64; see also id. at 68 ("showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability.").   The court is also cognizant that a plaintiff need not "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss."   Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (citing Doe v. Sch. Dist. of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003)).   "When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right."   Doe ex rel., 340 F.3d at 614.

The court dismisses all of plaintiff's § 1983 claims against Meade County, Ms. Utter, Mr. Swanson and Ms. Richey, except count four, alleging unconstitutional policies, practices and customs, see Docket 15 at ¶¶ 98-104, and count two, a § 1983 conspiracy claim.   With regard to plaintiff's Monell claims in count four, plaintiff articulated multiple plausible § 1983 claims under which Meade County could be held liable.   (Docket 15 at ¶101).

### C.    Plaintiff's Federal Claims

#### 1.    Count 1

Mr. Engesser asserts § 1983 claims of malicious prosecution, false arrest, use of unreliable and fraudulent investigative techniques, procurement of unreliable and fabricated evidence, and wrongful conviction and imprisonment against all of the defendants.   (Docket 15 at pp. 20-23).   Except for references to case law holding that a violation of <u>Brady</u> gives rise to a procedural due process claim that is actionable under § 1983, plaintiff's briefs are devoid of citations to legal authority establishing that Mr. Engesser's allegations constitute constitutional violations.

##### i.    Malicious Prosecution

Because probable cause existed to believe Mr. Engesser committed an offense, <u>see</u> <u>infra</u> Part II.D.3, the court grants defendants' motions to dismiss Mr. Engesser's malicious prosecution claims.   The United States Court of Appeals for the Eighth Circuit has not recognized malicious prosecution, without more, as a cognizable claim under § 1983.   <u>See</u> <u>Bates v. Hadden</u>, 576 F. App'x 636, 639 (8th Cir. 2014) (quoting <u>Harrington v. City of Council Bluffs, Iowa</u>, 678 F.3d 676, 680 (8th Cir. 2012)) ("The Supreme Court in [<u>Albright v. Oliver</u>, 510 U.S. 266 (1994)] declined to decide whether defendants have a Fourth Amendment right against malicious prosecution . . . . Our sister circuits have taken a variety of approaches on the issue of whether or when malicious prosecution violates the

Fourth Amendment.   We need not enter this debate now.") (internal quotation marks and citations omitted).

### ii.     False Arrest

Mr. Engesser agreed to dismiss his false arrest claims.   (Docket 25 at pp. 3-4).   The court grants defendants' motions to dismiss Mr. Engesser's § 1983 claims for false arrest.   See infra Part II.D.2.

### iii.    Use of Unreliable and Fraudulent Investigative Techniques and Procurement of Unreliable and Fabricated Evidence

The court considers plaintiff's claims for the use of unreliable and fraudulent investigative techniques and procurement of unreliable and fabricated evidence together.   To the extent Mr. Engesser asserts a § 1983 claim on these grounds distinct from a procedural due process claim under Brady, the court finds his claims are based on the due process clause of the Fourteenth Amendment.   See Winslow v. Smith, 696 F.3d 716, 731 (8th Cir. 2012).   Mr. Engesser's "substantive due process claims are derived from [his] liberty interest in fair criminal proceedings."   Id. (citing Wilson v. Lawrence Cnty., 260 F.3d 946, 956 n.8 (8th Cir. 2001)).

"To establish a constitutional violation based on an inadequate investigation, a plaintiff must show that the defendant officer's 'failure to investigate was intentional or reckless, thereby shocking the conscience.' "   Id.

at 732 (quoting <u>Cooper v. Martin</u>, 634 F.3d 477, 481 (8th Cir. 2011)).[1]   The

Eighth Circuit explained that the following situations indicate a reckless or

intentional failure to investigate that shocks the conscious: "(1) evidence that the

state actor attempted to coerce or threaten the defendant, (2) evidence that

investigators purposefully ignored evidence suggesting the defendant's

innocence, [or] (3) evidence of systematic pressure to implicate the defendant in

the face of contrary evidence."   <u>Id.</u> (internal quotation marks omitted) (quoting

<u>Akins v. Epperly</u>, 588 F.3d 1178, 1184 (8th Cir. 2009)).   "Mere negligent failure

to investigate, such as failing to follow up on additional leads, does not violate

due process."   <u>Id.</u> (citing <u>Amrine v. Brooks</u>, 522 F.3d 823, 833-34 (8th Cir.

2008)).

"[Although] a reckless investigation claim may be supported by proof that

investigators exerted systematic pressure to implicate the defendant in the face

of contrary evidence, . . . a manufactured false evidence claim requires proof that

investigators deliberately fabricated evidence in order to frame a criminal

defendant."   <u>Id.</u> (internal quotation marks and citations omitted).   However, the

Eighth Circuit cautions:

> Defendants may not be held liable merely for aggressively
> investigating the crime, believing witnesses, following leads, and
> discounting those pieces of evidence that do not fit with the evidence
> at the scene of the crime.   In investigating a crime, it is unlikely that

---

[1]Although the issue before the Eighth Circuit in <u>Winslow</u> was whether defendants were entitled to qualified immunity, the court's preliminary analysis regarding whether a constitutional right of the plaintiff was violated is instructive.

every witness's account will align perfectly with the testimony of
every other witness.

Id. at 734.

Because plaintiff sued Ms. Utter, Mr. Swanson and Ms. Richey in their
official capacities, his suit is against Meade County.   Only count four alleges a
plausible claim against a municipality under Monell.   Mr. Engesser's reckless
investigation and manufacture of false evidence claims against the Meade
County defendants are dismissed.

The court finds Mr. Engesser stated plausible substantive due process
§ 1983 claims against Trooper Fox and Mr. Kayras for reckless investigation and
manufacture of false evidence.   In reaching this determination, the court
considered the totality of Mr. Engesser's factual allegations and accepted them
as true.   See Docket 15 at ¶¶ 13, 15, 24, 25, 28, 31, 35, 46, 47, 48, 85, 86 99,
100 & 101.

### iv.    Wrongful Conviction and Imprisonment

Mr. Engesser's § 1983 claim for wrongful conviction and imprisonment is
not properly construed as a Monell claim for which Meade County can be held
liable.   Reviewing the allegations in plaintiff's amended complaint and plaintiff's
separate § 1983 claims for alleged substantive and procedural due process
violations, malicious prosecution and false arrest, the court can find no distinct
§ 1983 cause of action which would embrace Mr. Engesser's allegations relating

to Trooper Fox and Mr. Kayras.[2]   Cf. Wallace v. Kato, 549 U.S. 384, 390 (2007)

("If there is a false arrest claim, damages for that claim cover the time of

detention up until issuance of process or arraignment, but not more.   From that

point on, any damages recoverable must be based on a malicious prosecution

claim and on the wrongful use of judicial process rather than detention itself.").

Defendants' motions to dismiss plaintiff's § 1983 claim for a wrongful conviction

and imprisonment are granted.

### 2.   Section 1983 Conspiracy to Violate Constitutional Rights

"To prove a civil conspiracy under § 1983, [a plaintiff] must show (1) two or

more persons; (2) an object to be accomplished; (3) a meeting of the minds on the

object or course of action to be taken; (4) the commission of one or more unlawful

overt acts; and (5) damages as the proximate result of the conspiracy."   Dean v.

Cty. of Gage, Neb., 807 F.3d 931, 939 (8th Cir. 2015), cert. denied sub nom. Gage

Cty., Neb. v. Dean, No. 15-1278, 2016 WL 1545463 (U.S. June 20, 2016)

(internal quotation marks omitted) (quoting Livers v. Schenck, 700 F.3d 340,

360-61 (8th Cir. 2012)).   "To be liable as a conspirator [one] must be a voluntary

participant in a common venture. . . . It is enough if [Defendants] understand the

general objectives of the scheme, accept them, and agree, either explicitly or

implicitly, to do [their] part to further them."   Id. (internal quotation marks and

citations omitted).   "The plaintiff is additionally required to prove a deprivation

---

[2]Plaintiff abandoned his false arrest claims and only supplied briefing of
an alleged § 1983 claim based on a procedural due process violation under
Brady.

of a constitutional right or privilege in order to prevail on a § 1983 civil

conspiracy claim." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008)

(citations omitted).   "[A] claim of civil conspiracy is not an independent cause of

action, and can only be sustained after an underlying tort claim has been

established." Holmes v. Slay, No. 4:12CV2333, 2015 WL 1349598, at *7 (E.D.

Mo. Mar. 25, 2015) (citing Hanten v. School Dist. of Riverview Gardens, 183 F.3d

799, 809 (8th Cir. 1999)).

The court has determined Mr. Engesser stated plausible § 1983 claims on

which relief could be granted.   See Docket 35 at p. 9 (Meade County argued only

that plaintiff cannot establish the existence of a conspiracy because he cannot

establish a deprivation of a constitutional right).   The court denies defendants'

motions to dismiss and finds Mr. Engesser stated a plausible § 1983 conspiracy

claim against Trooper Fox, Mr. Kayras and Meade County.

### 3.   Section 1983 Claim for Oppression of Exculpatory Evidence

"In Brady, the Supreme Court held that 'suppression by the prosecution of

evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith

or bad faith of the prosecution." Villasana v. Wilhoit, 368 F.3d 976, 978 (8th Cir.

2004) (quoting Brady, 373 U.S. at 87).   "Materially favorable evidence includes

both exculpatory and impeachment evidence." Id. (citing United States v.

Bagley, 473 U.S. 667, 676 (1985)).   "To comply with Brady, a prosecutor must

'learn of any favorable evidence known to the others acting on the government's

23

behalf in this case, including the police.' " Id. (quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995)).

"Brady ensures that the defendant will obtain relief from a conviction tainted by the State's nondisclosure of materially favorable evidence, regardless of fault, *but the recovery of § 1983 damages requires proof that a law enforcement officer other than the prosecutor intended to deprive the defendant of a fair trial*." Villasana, 368 F.3d at 980 (emphasis added). See also Stewart v. Wagner, ____ F.3d ___, 2016 WL 4728039 (8th Cir. September 12, 2016).

At the outset, the court notes Mr. Engesser did not sue Ms. Utter, Mr. Swanson or Ms. Richey in their individual capacities (Docket 27 at p. 3), nor could he with regard to his alleged Brady claim. See Villasana, at 979 (A prosecutor evaluating whether evidence must be disclosed because it is materially favorable to the defense has "absolute immunity from Brady damages claims under § 1983.") (citing Imbler v. Pachtman, 424 U.S. 409, 431 n.34 (1976)). The State has been dismissed as a defendant under plaintiff's federal claims and Meade County can only be liable for § 1983 damages in a Monell claim, which count three is not. This leaves only Trooper Fox and Mr. Kayras as defendants to the claim.

The South Dakota Supreme Court, when considering whether the trial court erred in refusing Mr. Engesser's requested spoliation instruction regarding biological evidence found in the Corvette, expressly concluded there was no indication the evidence was destroyed intentionally or in bad faith. Engesser

24

CR., 661 N.W.2d at 755.   The Court further noted Mr. Engesser demonstrated no prejudice from the lost evidence.   Id. at 755-56.   The court dismisses plaintiff's § 1983 Brady claim against Trooper Fox and Mr. Kayras to the extent it seeks to impose liability based on the destruction of the Corvette and the biological evidence contained inside of it.

With regard to the sun visor which Mr. Engesser alleges was removed from the Corvette and destroyed, and a video of the crash scene that was destroyed, the court can find no clear indication the South Dakota Supreme Court considered whether these were destroyed with an intent to deprive Mr. Engesser of a fair trial.   See Docket 15 at ¶¶ 61, 62 & 95.   The court finds Mr. Engesser stated a plausible § 1983 Brady claim with regard to these items of lost evidence against Trooper Fox and Mr. Kayras.

The court next addresses each of the witnesses who did not testify at Mr. Engesser's criminal trial and whose absence he claims violated his procedural due process right under Brady.   These witnesses include: Eric Eckholm, Charlotte Fowler, Sean Boyle, Phyllis Gillies and Phillip Syverson.   See id. at 7-17.

Mr. Engesser asserts "[a]t no time did either Jenniffer Utter or Trooper Fox ever disclose to the Plaintiff the exculpatory evidence known to them regarding Sean Boyle." (Docket 15 at ¶ 53).   Plaintiff's assertions surrounding Mr. Boyle are contrary to the record and rulings made by the South Dakota Supreme Court.   The Supreme Court noted:

> *Before trial*, the defense gave notice of intent to use exculpatory hearsay.  The proffered evidence was the testimony of Engesser's civil attorney [Dennis Finch] who was prepared to testify that he had interviewed Sean Boyle, a security guard at the bar where Finley and Engesser spent time the evening of the accident.  The attorney would testify that an interview over the phone with Boyle revealed that Finley had been driving at the time the two left the bar and further, that Finley rarely, if ever, allowed others to drive her Corvette.

Engesser CR., 661 N.W.2d at 745 (emphasis added).

Mr. Engesser was aware of Mr. Boyle's statement, which is why he sought its admission prior to trial through Mr. Engesser's civil attorney under the "catch-all" hearsay exception.  Id. at 751.  The trial court refused the hearsay testimony and the South Dakota Supreme Court upheld the ruling.  See id. at 751-53.  Plaintiff failed to state a plausible claim that a Brady violation occurred.

Mr. Engesser asserts "[a]t no time did law enforcement officers or the States Attorney ever divulge exculpatory testimony by Phyllis Gillies to the Plaintiff."  (Docket 15 at ¶ 60).  Mr. Engesser called Ms. Gillies to testify at his federal habeas hearing.  Ms. Gillies testified that, among other things, she "had known Finley since 1992. . . . She described Finley's hair style as medium length, permed, and reddish brown in color with no gray. . . . [and] that Finley loved her red Corvette and liked to speed."  Engesser 2011, 823 F. Supp. 2d at 923.  The court concluded Ms. Gillies was "not a newly discovered witness . . . because her testimony could have been discovered through the exercise of due diligence."  Id. at 924.  The South Dakota Supreme Court did not rely on Ms. Gillies'

testimony in upholding the circuit court's grant of Mr. Engesser's writ of habeas corpus.   See Engesser 2014, 856 N.W.2d at 478.   Mr. Engesser failed to articulate specific facts indicating Trooper Fox or Michael Kayras withheld Ms. Gillies' testimony with an intent to deprive him of a fair trial or that they even knew of her.   The record before the court indicates Ms. Gillies had been Ms. Finley's friend since 1992 and Mr. Engesser's various attorneys failed to obtain her testimony until 2011, approximately ten years after his conviction at trial. Plaintiff failed to state a plausible claim that a Brady violation occurred.

Mr. Engesser asserts "[a]t no time did Trooper Fox or any law enforcement officer divulge to the Plaintiff witness [Phillip] Syverson as exculpatory evidence." (Docket 15 at ¶ 58).   Mr. Syverson was first contacted to appear as a witness approximately one month before Mr. Engesser's June 30, 2011, federal habeas hearing.   Engesser 2011, 823 F. Supp. 2d at 923.   "[Mr.] Syverson was discovered as a potential witness after the accident came up in a conversation with his co-workers [one of which included Mr. Engesser's cousin Rusty Engesser]."   Engesser 2014, 856 N.W.2d at 475.   This conversation occurred approximately four or five years prior to Mr. Engesser's habeas hearing in federal district court.   See Engesser 2011, 823 F. Supp. 2d at 923; see also Engesser 2014, 856 N.W.2d at 475-76 (noting Mr. Syverson told his coworkers that he saw an accident involving a red Corvette a year earlier).   Mr. Syverson and his family left before law enforcement officers arrived on the scene of the crash.   Engesser 2014, 856 N.W.2d at 475.

27

There is no indication Trooper Fox or Mr. Kayras acted with an intent to deprive Mr. Engesser of a fair trial by concealing the existence of Mr. Syverson. Indeed, there is no indication Trooper Fox or Mr. Kayras knew Mr. Syverson existed while Mr. Engesser's criminal prosecution was ongoing.   While plaintiff alleged these defendants performed a reckless investigation, plaintiff failed to articulate specific facts, beyond legal conclusions, demonstrating a plausible claim that a <u>Brady</u> violation occurred.

Although Mr. Engesser does not explicitly allege the defendants failed to disclose the exculpatory evidence later brought forth through Eric Eckholm and Charlotte Fowler, that is the inference in the amended complaint.   <u>See</u> Docket 15 at ¶¶ 23-25, 30-35 & 42-44.   The timeline of Mr. Eckholm's and Ms. Fowler's habeas testimony relative to Mr. Engesser's criminal prosecution is significant in determining whether Mr. Engesser stated a plausible claim that a <u>Brady</u> violation occurred.   The statements plaintiff relies on in support of these assertions occurred at Mr. Engesser's June 30, 2011, federal habeas hearing, which was the first time either Mr. Eckholm or Ms. Fowler testified in court regarding the crash.   <u>Engesser 2011</u>, 823 F. Supp. 2d at 917.

In <u>Engesser 2014</u>, the South Dakota Supreme Court determined "[a]lthough Eckholm and Fowler were originally questioned at the scene of the accident and neither indicated that they could identify the driver, during the habeas hearing they claimed otherwise."   856 N.W.2d at 474.   With regard to Ms. Fowler the Court further explained "though she told Trooper Fox on the night

of the accident that she was looking at her console and did not see the Corvette hit the minivan, she in fact saw the accident.   She saw a man thrown from the Corvette."   Id.

At Mr. Engesser's federal habeas hearing, Mr. Engesser's trial counsel testified:

> [H]e first knew Eckholm was a potential witness when he received the first packet of discovery materials from the prosecution. . . . Neither Rensch nor his investigators spoke to Eckholm before the trial, even though he was listed as an eyewitness in the discovery materials. . . . Nor did Rensch or his investigators contact Fowler, although Rensch was aware of her name throughout the case.

Engesser 2012, 823 F. Supp. 2d at 918; see also id. at 917 ("Eckholm later contacted Tim Rensch, Engesser's trial attorney, after he read a newspaper article about the case. . . . During the phone call, Eckholm told Rensch that a woman was driving the vehicle.").[3]

Mr. Engesser's trial attorney was aware of Mr. Eckholm and Ms. Fowler prior to Mr. Engesser's trial.   Mr. Eckholm informed the attorney he thought a woman was driving the vehicle.   Mr. Engesser failed to state a plausible claim that either Mr. Eckholm's or Ms. Fowler's testimony was withheld from him with the intent to deprive him of a fair trial.   Defendants' motions to dismiss

---

[3]Mr. Engesser asserted an ineffective assistance of counsel claim at the federal habeas hearing.

Mr. Engesser's § 1983 claims alleging various <u>Brady</u> violations for oppression of exculpatory eyewitness testimony is granted.[4]

### 4. Section 1983 Claims Alleging a Policy, Practice or Custom of Unconstitutional Acts

Consistent with the court's prior rulings, the court finds Mr. Engesser stated plausible § 1983 claims under <u>Monell</u> against Meade County and a failure to supervise claim against Mr. Kayras.   Plaintiff's allegations in count four (Docket 15 at ¶101) are not applicable to Mr. Engesser's individual capacity claims against Trooper Fox.

### D. South Dakota State Law Claims

### 1. Negligence

Under South Dakota law, " '[i]n order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury.' "   <u>Hendrix v. Schulte</u>, 736 N.W.2d 845, 847 (S.D. 2007) (quoting <u>Fisher Sand & Gravel Co. v. S.D. Dep't of Transp.</u>, 558 N.W.2d 864, 867 (S.D. 1997)).   The existence of a duty is usually a question of law to be determined by the court.   <u>Id.</u> (citing <u>Erickson v. Lavielle</u>, 368 N.W.2d 624 (S.D. 1985)).   "A duty can be created by either statue or common

---

[4]Although not identified in plaintiff's amended complaint, the court notes that the South Dakota Supreme Court recognized "at the time of Engesser's trial and first habeas petition, neither counsel could have known that [Greg] Smeenk was a potential witness." <u>Engesser 2014</u>, 856 N.W.2d at 475.   The Supreme Court also recognized that "the existence of [Ramona] Dasalla as a witness was unknown until April 2013." <u>Id.</u> at 477.

law." Id. (citing Kuehl v. Horner Lumber Co., 678 N.W.2d 809 (S.D. 2004)).

Plaintiff has the burden of proving a duty existed.   See Tschetter v. Berven, 621

N.W.2d 372, 378 (S.D. 2001).

The crux of Mr. Engesser's fifth count relating to Trooper Fox and Mr.

Kayras is that they performed a negligent investigation which ultimately led to

his conviction and imprisonment.   (Docket 15 at pp. 30-31).   Plaintiff asserts

the State is liable under the doctrine of *respondeat superior.*   Id. at ¶ 106.

Trooper Fox and Mr. Kayras argue under South Dakota's public duty doctrine

they owed no duty of care to Mr. Engesser in performing their investigation.

(Docket 19 at pp. 11-12).   Defendants assert because no duty of care existed,

Mr. Engesser's negligence claim fails.   Id.   If Trooper Fox and Mr. Kayras

cannot be found negligent, no *respondeat superior* liability attaches to the State.

South Dakota's public duty doctrine "[e]ssentially . . . declares [the]

government owes a duty of protection to the public, not to particular persons or

classes." Tipton v. Town of Tabor, 567 N.W.2d 351, 356 (S.D. 1997).   "[P]olice

officers are generally protected from liability through what is termed the

public-duty rule.   The rule provides that the police owe a duty to the public at

large and not to an individual or smaller class of individuals." Walther v. KPKA

Meadowlands Ltd. P'ship, 581 N.W.2d 527, 531 (S.D. 1998); see also E.P. v.

Riley, 604 N.W.2d 7, 13-14 (S.D. 1999) (The South Dakota Supreme Court

clarified that the public duty doctrine applies to issues involving law

enforcement.).   The South Dakota Supreme Court views the public duty

doctrine "within the framework of duty—if none exists, then no liability may affix."  Tipton, 567 N.W.2d at 357.  "South Dakota has specifically refused to abrogate the public duty doctrine."  Riley, 604 N.W.2d at 12 (citing Gleason v. Peters, 568 N.W.2d 482, 484 (S.D. 1997)).

Plaintiff failed to refute Trooper Fox's and Mr. Kayras' assertions they owed him no duty of care when performing their investigation.  See Docket 25 at pp. 19-20 (Plaintiff argued only that his state law negligence claims were not time barred.).  Plaintiff did not reference or cite any legal authority which would except the actions of Trooper Fox and Mr. Kayras from South Dakota's public duty doctrine.  Plaintiff failed to carry his burden of demonstrating Trooper Fox and Mr. Kayras owed him a duty of care.  Without demonstrating the existence of a duty, Mr. Engesser cannot sustain a negligence claim against these defendants.  Because Trooper Fox and Mr. Kayras cannot be found liable for negligence, no *respondeat superior* liability attaches to the State.  Defendants' motions to dismiss are granted.

With regard to the Meade County defendants, plaintiff asserts their negligent prosecution caused his conviction and ultimate imprisonment. (Docket 15 at pp. 30-31).  Plaintiff claims Meade County is liable under the doctrine of *respondeat superior*.  Id. at ¶ 106.  Plaintiff contends the disclosure obligations imposed on prosecutors under Brady creates a civil negligence duty of care under South Dakota law.  (Docket 27 at pp. 11-12).  Plaintiff did not identify any legal authority to support this proposition and the court can find

32

none.   Plaintiff failed to carry his burden of proving that a duty existed.

Defendants' motion to dismiss is granted.

### 2.   False Arrest

Mr. Engesser concedes his claims for false arrest "accrued once [he] faced official judicial process through grand jury indictment."   (Docket 25 at p. 3). Mr. Engesser agreed to dismiss all of his false arrest claims.   Id.   The time within which Mr. Engesser could bring a § 1983 claim for false arrest expired. See SDCL § 15-2-15.2.   The court dismisses Mr. Engesser's § 1983 and South Dakota state law claims for false arrest against all defendants.

### 3.   Malicious Prosecution

Mr. Engesser made a state law claim of malicious prosecution against all of the defendants.   (Docket 15 at pp. 32-33).   The defendants assert Mr. Engesser cannot state a claim upon which relief can be granted because his arrest was supported by probable cause.   Under South Dakota law, a malicious prosecution claim consists of six essential elements:

> (1) The commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff.

Danielson v. Hess, 807 N.W.2d 113, 115-16 (S.D. 2011) (citations omitted).

"A plaintiff must prove all six elements."   Id. (citing Miessner v. All Dakota Ins. Assocs., Inc., 515 N.W.2d 198, 200 (S.D. 1994)).

Mr. Engesser asserts "[a]t this juncture, the Court must take the allegations in Plaintiff's complaint that Trooper Fox lack [sic] probable cause as true."   (Docket 27 at p. 14); <u>see also</u> Docket 15 at ¶ 80 ("Defendants utilized information obtained illegally, without probable cause, knowing such information was inherently unreliable and illegal.") and ¶ 13(L) ("Taking aggressive law enforcement actions without first having met the standard of probable cause.").   These are legal conclusions the court need not accept as true.   See <u>Ashley</u>, 408 F.3d at 1000.   Mr. Engesser's legal conclusions are contrary to the opinions of the South Dakota Supreme Court and the Eighth Circuit on the issue—opinions that Mr. Engesser incorporates into his complaint. (Docket 15 at pp. 17-20).

"Probable cause exists when *the available facts and circumstances* are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed."   <u>Engesser 2006</u>, 457 F.3d at 740 (internal quotation marks and citations omitted) (emphasis added).   The South Dakota Supreme Court and the Eighth Circuit determined probable cause existed to believe Mr. Engesser committed an offense.   The South Dakota Supreme Court opined "Engesser has shown no error in the trial court's determination that the objective circumstances amounted to probable cause to believe that a crime may have been committed and that the blood test would uncover relevant evidence of the crime."   <u>Engesser CR.</u>, 661 N.W.2d at 747.   The Court "conclude[d] that there was probable cause to arrest Engesser.   The determinative question [is]

34

. . . whether the trooper had probable cause to arrest the defendant.   He did and therefore this search was reasonable."   Id. at 748.

The Eighth Circuit agreed, noting that these "facts alone are sufficient such that an officer of reasonable caution would believe Engesser had committed an offense.   Furthermore, Trooper Fox's subjective beliefs about who he thought was driving are not relevant to a probable cause inquiry."   Engesser 2006, 457 F.3d at 740.   The Eighth Circuit identified the following facts as creating probable cause in Mr. Engesser's underlying criminal case:

> (1) Engesser was found lying approximately six to ten feet from the Corvette's driver's side door, (2) emergency responders had to use the Jaws of Life to extricate Finley because they could not open the Corvette's severely damaged passenger side door, (3) Finley was pronounced dead at the scene, (4) Trooper Fox detected a strong odor of alcohol emanating from Engesser, (5) the Corvette had been traveling at a high rate of speed when the collision occurred, and (6) exigent circumstances existed to preserve any BAC test evidence.

Id. (citing Engesser CR., 661 N.W.2d at 748); see also Engesser 2014, 856 N.W.2d 471, 473 (At the time Trooper Fox obtained statements from the witnesses at the scene "[n]o witness . . . stated specifically whether the driver was a man or woman.").

The facts cited by the South Dakota Supreme Court and the Eighth Circuit providing probable cause to believe Mr. Engesser committed an offense remain valid.   Much of the newly discovered eyewitness testimony supporting Mr. Engesser's successful habeas petition in 2014 was unknown following the crash and during the pendency of his criminal case.   See supra Part II.C.3.   The facts

35

which were known at the time of the accident, when viewed objectively, establish probable cause to believe Mr. Engesser committed an offense.[5]

To the extent plaintiff attempts to raise a claim of malicious prosecution for the state's opposition to his multiple petitions for habeas corpus relief following his criminal conviction, the argument misses the mark.   The court must assess whether probable cause existed at the time of the accident and the state's investigation and during the prosecution of Mr. Engesser.   Exculpatory eyewitness testimony discovered years and after his conviction does not invalidate the probable cause determination made at the time of the investigation.   The court recognizes that during the years while Mr. Engesser's habeas petitions and appeals were pending and the new eyewitness testimony was discovered, he had already been convicted in an error-free trial and did not enjoy the constitutional safeguards associated with the presumption of innocence.   See Engesser 2014, 856 N.W.2d at 483 (citing Herrera v. Collins, 506 U.S. 390, 399 (1993))

Mr. Engesser cannot prove all six essential elements of a malicious prosecution claim under South Dakota law.   Defendants' motion to dismiss is granted.   Having determined probable cause existed to believe Mr. Engesser committed an offense, his § 1983 claim alleging a malicious prosecution also fails

---

[5]Mr. Engesser admitted in his amended complaint that his case was brought before a grand jury.   (Docket 15 at ¶ 36).   A prerequisite to the commencement of his criminal trial was the grand jury finding probable cause to believe he committed the charged offenses.

and is dismissed against all defendants.   See Joseph v. Allen, 712 F.3d 1222, 1228 (8th Cir. 2013).

Because the court dismissed plaintiff's pendant state law claims, it need not address defendants' arguments that Mr. Engesser's state law claims must be dismissed based on his failure to comply with South Dakota's notice requirement under SDCL § 3-21-2.

## III.    Punitive Damages

Plaintiff seeks punitive damages against Meade County.   (Docket 15 at ¶ 121).   The court denies Mr. Engesser's request for punitive damages for his § 1983 claims against Meade County.   See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (holding that "a municipality is immune from punitive damages under 42 U.S.C. § 1983.").   Because Mr. Engesser waived his false arrest claims and the court dismissed his remaining state law claims, the court need not determine whether Meade County may be held liable for punitive damages on plaintiff's pendant state law claims.

## IV.    Qualified Immunity

The court finds that an adjudication of whether any of the defendants are entitled to qualified immunity is premature at this juncture.

### CONCLUSION

Mr. Engesser's surviving claims are as follows:

1.   A substantive due process § 1983 claim against Trooper Fox and Mr. Kayras for reckless investigation and manufactured evidence.

37

2. A procedural due process § 1983 claim under <u>Brady v. Maryland</u> against Trooper Fox and Mr. Kayras for destroying the Corvette's sun visor, including any evidence contained on it, and for destroying a video of the scene of the crash.

3. A § 1983 <u>Monell</u> claims against Meade County for unconstitutional policies and practices.

4. A § 1983 claim for failure to supervise against Mr. Kayras.

5. A § 1983 conspiracy claim against Trooper Fox, Mr. Kayras and Meade County.

The court dismisses the remainder of Mr. Engesser's federal claims.   The court dismisses all of Mr. Engesser's pendant state law claims.   To the extent the Meade County defendants move to strike portions of plaintiff's complaint (Docket 20), the motion is denied.

**ORDER**

Based on the above analysis, it is

ORDERED that the motion to dismiss by Trooper Edward Fox and the State of South Dakota (Docket 18) is granted in part and denied in part consistent with the court's analysis.

IT IS FURTHER ORDERED that the joint motion to dismiss and motion to strike by defendants Jennifer Utter, Gordon Swanson, Amber Richey and Meade County (Docket 20) is granted in part and denied in part consistent with the court's analysis.

IT IS FURTHER ORDERED that defendant Michael Kayras' motion to dismiss (Docket 29) is granted in part and denied in part consistent with the court's analysis.

IT IS FURTHER ORDERED that defendants shall file an answer responding to plaintiff's surviving claims and related allegations in the amended complaint by **October 17, 2016**.

Dated September 26, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE