# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## WESTERN DIVISION

| | |
|---|---|
| OAKLEY ENGESSER, | CIV. 15-5044-JLV |
| Plaintiff, | |
| vs. | ORDER |
| TROOPER EDWARD FOX, of the South Dakota Highway Patrol, in his individual capacity; TROOPER FOX'S SUPERVISOR MICHAEL KAYRAS, in his individual capacity; MEADE COUNTY STATES ATTORNEY JENNIFER UTTER; MEADE COUNTY STATES ATTORNEY GORDON SWANSON; MEADE COUNTY ASSISTANT STATES ATTORNEY AMBER RICHEY; and MEADE COUNTY, | |
| Defendants. | |

## INTRODUCTION

This civil case originated in a tragic vehicle accident. Plaintiff Oakley Engesser and Dorothy Finley were in a Corvette that crashed into another vehicle on Interstate 90 near Sturgis, South Dakota, on July 30, 2000. Ms. Finley was killed in the accident. Plaintiff was convicted of vehicular homicide and vehicular battery in South Dakota state court and served at least 11 years in state prison before receiving state habeas relief. Plaintiff now brings this action under 42 U.S.C. § 1983 seeking damages for constitutional violations he alleges defendants committed in relation to the investigation and prosecution of his

criminal case.   Defendants seek summary judgment and plaintiff resists the motions.   (Dockets 57, 73, 77 & 89).

Defendants' summary judgment motions were referred to Magistrate Judge Veronica L. Duffy pursuant to the court's standing order of October 16, 2014, and 28 U.S.C. § 636(b)(1) for a report and recommendation ("R&R").   The magistrate judge issued an R&R concluding summary judgment should be granted on all claims pertaining to defendant Michael Kayras and the Meade County defendants,[1] but plaintiff's reckless investigation claim against defendant Edward Fox should proceed.   (Docket 112).   Plaintiff and defendant Fox timely objected to the R&R and each filed a response to the other's objections.   (Dockets 115, 117, 120 & 121).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   Id.   The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   Id.   The court concludes defendant Fox is entitled to qualified immunity on plaintiff's reckless investigation claim and agrees with the magistrate judge's disposition of the remaining claims.   Accordingly, the court sustains defendant Fox's objections to the R&R, overrules plaintiff's objections,

---

[1]The court refers to defendants Jennifer Utter, Gordon Swanson, Amber Richey and Meade County as the "Meade County defendants."

2

and grants summary judgment to defendants. The court adopts the R&R in part and rejects it in part, consistent with this order.

## I. Surviving Claims

Plaintiff named seven defendants in his amended complaint and alleged seven substantive counts. (Docket 15). The court previously dismissed many of plaintiff's claims, including all of his claims grounded in South Dakota law and his claims against the state of South Dakota. (Docket 38). The court summarized the surviving claims, which are all brought under § 1983, as follows:

1. A substantive due process claim against defendants Fox and Kayras for reckless investigation and manufactured evidence;

2. A procedural due process claim against defendants Fox and Kayras under Brady[2] for destroying evidence;

3. A Monell[3] claim against Meade County;

4. A failure to supervise claim against defendant Kayras; and

5. A conspiracy claim against defendants Fox, Kayras and the Meade County defendants.

(Docket 38 at pp. 37-38).

## II. Facts

The magistrate judge made extensive factual findings. (Docket 112 at pp. 2-23). Defendant Fox objected to portions of these findings. (Docket 115 at pp. 4-10). Because the court determines defendant Fox is entitled to qualified

---

[2]Brady v. Maryland, 373 U.S. 83 (1963).

[3]Monell v. Dept. of Social Serv. of City of NY, 436 U.S. 658 (1978).

immunity, many of these factual disputes are immaterial and the court declines to settle them.   See infra Section IV.   Accordingly, the court cannot adopt the R&R's factual recitation in full.   Instead, the court sets forth basic facts below and discusses additional facts in the order where pertinent.   These facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted).

On July 30, 2000, plaintiff and Ms. Finley were driving in Ms. Finley's Corvette on Interstate 90 when they crashed into another vehicle.   State v. Engesser, 661 N.W.2d 739, 743 (S.D. 2003) ("Engesser I").[4]   The Corvette was traveling approximately 112 miles per hour before the collision.   Id. at p. 744. A later blood test showed that plaintiff's blood alcohol concentration would have been approximately .125 at the time of the collision.   Id. at p. 745.   Plaintiff was thrown from the vehicle and found near the driver's side door.[5]   (Docket 99 at ¶ 3).   Ms. Finley was found dead inside the vehicle.   Id. at ¶ 4.

It is disputed who arrived first on the scene of the accident.   (Docket 115 at p. 9).   However, it is not disputed that a number of civilian witnesses and

---

[4]Plaintiff generally objected to defendant Fox's citations to "previous judicial opinions."   (Docket 87 at p. 1).   He gave no reason for his general objection and noted the court already took judicial notice of the prior state and federal opinions in this case.   Id.; see also Docket 38 at pp. 5-6.   The court again takes judicial notice of these opinions.

[5]The parties dispute how far plaintiff was thrown from the vehicle, but agree the collision ejected him from the Corvette.

emergency medical personnel arrived on scene before law enforcement.
(Dockets 99 at ¶¶ 6, 8, 10, 25 & 87 at ¶ 36).   Paramedic Aaron Zimmiond found
Ms. Finley in the passenger side of the Corvette.   (Dockets 99 at ¶ 4 & 76-9).   He
instructed other first responders to remove Ms. Finley's body from the Corvette.
(Docket 76-9).   At some point before law enforcement arrived on scene, the
driver's side door of the Corvette was opened.   (Docket 99 at ¶ 8).

Defendant Fox, a South Dakota State Highway Patrol Trooper, and
defendant Kayras, a sergeant with the State Highway Patrol and defendant Fox's
supervisor, arrived on scene with other law enforcement officers after Ms.
Finley's body had been removed from the Corvette.   Id. at ¶¶ 5, 6, & 10.
Plaintiff was being transported to the hospital at that time.   Id. at ¶ 11.
Defendant Kayras chose defendant Fox to lead the investigation.   Id. at ¶ 12.
Defendant Fox took witness statements on scene from several individuals,
including Eric Eckholm and Charlotte Delaney Fowler.[6]   Id. at ¶¶ 13, 25.   Mr.
Eckholm made a written statement in which he did not state if he observed who
was driving the Corvette.   (Docket 61-2).   Ms. Delaney Fowler did not write a
statement.   Defendant Fox testified in a deposition for this litigation that Ms.
Delaney Fowler "did not see anything" related to the collision and he did not ask
her to write a statement.   (Docket 109 at p. 49).

---

[6]This witness is referred to in the record alternatively as Charlotte Delaney
and Charlotte Fowler.   Like the magistrate judge, the court refers to her as
Charlotte Delaney Fowler to avoid confusion.   (Docket 112 at p. 11 n.8).

Following the accident, defendant Fox arranged for the Corvette to be impounded with a local facility.   (Docket 99 at ¶ 34).   The facility stored the Corvette outside and uncovered.   Id. at ¶ 36.   The facility allowed Ms. Finley's family members to access the Corvette "in order to find [her] identification card." Id. at ¶ 62.   Ms. Finley's daughter, Becky Feist, accessed the Corvette and apparently brought a wrongful death suit against plaintiff.[7]   (Dockets 89 at pp. 11-12 & 99 at ¶ 63).   Plaintiff asserts Ms. Feist "had a financial interest in placing [him] behind the wheel."   (Docket 89 at p. 12).   Ms. Feist stated her brother found Ms. Finley's purse on the passenger's side of the Corvette. (Docket 99 at ¶ 63).   Neither defendant Fox nor defendant Kayras permitted Ms. Finley's family to access the Corvette.[8]   Id. at ¶ 64.

A law enforcement expert, Rex Riis, examined the Corvette on August 23, 2000.   Id. at ¶ 49.   Mr. Riis removed the passenger side sun visor from the Corvette because he observed a gray hair on it.   Id. at ¶ 56.   He also observed

---

[7]Plaintiff did not substantiate this factual assertion with record evidence. In his response brief, he quotes deposition testimony where he informed the deponents of the lawsuit and asked them to respond.   (Docket 89 at pp. 11-13).

[8]Plaintiff denies this fact but does not contest it with record evidence.   See Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record[.]").   The court accepts the fact as uncontroverted.   Fed. R. Civ. P. 56(e)(2).

blood on the sun visor.[9]  Id. at ¶ 51.   Mr. Riis did not test the hair because it lacked a follicle and did not test the blood on the sun visor "because he felt the forensic value to be low because the blood was located where [Ms.] Finley's head would have been."  Id. at ¶¶ 51, 57.   The state lost the sun visor after plaintiff's trial and it is unavailable today.  Id. at ¶ 60.

Defendant Fox interviewed plaintiff on September 13, 2000.  Id. at ¶ 74. He recorded the interview on a videocassette.  Id. at ¶ 72.   The recording was sent to plaintiff's trial counsel.  Id. at ¶ 73.   That recording was the only video law enforcement possessed concerning the accident or plaintiff's criminal case.[10] Id. at ¶ 75.

The state indicted plaintiff on charges of vehicular homicide and vehicular battery and he proceeded to trial in 2001.  Id. at ¶¶ 71, 77.   The "sole issue at the trial was whether" plaintiff or Ms. Finley was driving the Corvette.  Engesser v. Young, 856 N.W.2d 471, 473 (S.D. 2014) ("Engesser II").   No trial witness "testified to seeing the driver of the Corvette."  Id.   Defendant Fox testified he

---

[9]Plaintiff objects to this fact as irrelevant, but the court finds it relevant to the disposition of plaintiff's destruction of evidence claim.   (Docket 99 at ¶ 51). In general, if the court recites a fact subject to a relevance objection, the objection is overruled.

[10]Plaintiff asserts the numerous law enforcement vehicles on scene had the capability to record video and speculates video of the scene therefore exists. (Dockets 89 at pp. 31-32 & 99 at ¶ 75).   This is not evidence acceptable at the summary judgment stage to show law enforcement made any video of the accident scene.   See Lacey v. Norac, Inc., 932 F.3d 657, 660 (8th Cir. 2019) (citation omitted) ("Mere speculation is insufficient to defeat summary judgment.").   Because plaintiff did not controvert defendant Kayras' assertion that no additional video existed with record evidence, the court accepts the fact as true.   Fed. R. Civ. P. 56(e)(2).

concluded plaintiff was the driver.   Id.   The jury convicted plaintiff and the trial court sentenced him to 25 years in prison.   Engesser I, 662 N.W.2d at 745.

After his conviction, plaintiff undertook a series of habeas actions.   See Engesser II, 856 N.W.2d at 474-78.   During these actions, plaintiff uncovered a substantial amount of evidence tending to show Ms. Finley may have been driving the Corvette during the accident.   For example, Mr. Eckholm testified he observed a woman driving the Corvette.   (Docket 99 at ¶ 89).   Mr. Eckholm also testified he used female pronouns to refer to the driver when he spoke with law enforcement at the scene of the accident.   (Dockets 58 at ¶ 91 & 99 at ¶ 91). Ms. Delaney Fowler testified she did not see who was driving the Corvette at the time of the accident but that she had seen Ms. Finley driving the Corvette earlier in the day.   (Docket 99 at ¶¶ 94-95).   She also testified that she believed she mentioned to law enforcement on scene that a woman was driving.   Id. at ¶ 97. Two additional witnesses, Phillip Syverson and Ramona Dasalla, testified in habeas proceedings that a woman was driving the Corvette shortly before the accident.   Id. at ¶¶ 111-12, 115-16.   Law enforcement was unaware of both witnesses before plaintiff's criminal trial.   Id. at ¶¶ 114, 117.

In 2014, the South Dakota Supreme Court, relying on the evidence accumulated in his habeas actions, concluded plaintiff established "no reasonable juror would have found him guilty" of the criminal offenses for which he was convicted.   Engesser II, 856 N.W.2d at 484.   This § 1983 case followed,

alleging defendants violated plaintiff's constitutional rights in the investigation and prosecution of his criminal case and seeking damages.    (Docket 1).

## III.    Legal Standards

### A.    Summary judgment

Under Federal Rule of Civil Procedure 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).    Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).    Only disputes over facts which might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248.    "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate.    Id.    However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she

has the burden of proof." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita</u>, 475 U.S. at 587-88. The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.

### B. Qualified immunity

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." <u>City & Cty. of San Francisco, Calif. v. Sheehan</u>, 135 S. Ct. 1765, 1774 (2015) (internal quotation omitted). Resolving questions of qualified immunity requires undertaking two inquiries. The first asks: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). Second, the court must "ask whether the right was clearly established." <u>Id.</u> A negative outcome to either inquiry results in qualified immunity for the official. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). There need not be "a case directly on point for a right to be clearly established" but "existing precedent must have placed the statutory or constitutional question beyond debate." Kisela v. Hughes 138 S. Ct. 1148, 1152 (2018) (internal quotation omitted). The Supreme Court "repeatedly told courts . . . not to define clearly established law at a high level of generality." Id. (internal quotation omitted). "[T]he clearly established law must be particularized to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017) (internal quotation omitted). "The plaintiffs have the burden of showing that the law was clearly established." Estate of Walker v. Wallace, 881 F.3d 1056, 1060 (8th Cir. 2018).

"[Q]ualified immunity is important to society as a whole[.]" Pauly, 137 S. Ct. at 551 (internal quotation omitted). Accordingly, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Stanton v. Sims, 571 U.S. 3, 6 (2013) (internal quotations omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Ambrose v. Young, 474 F.3d 1070, 1077 (8th Cir. 2007).

**IV.    Defendant Fox's Objections**

The magistrate judge recommended denying defendant Fox's summary judgment motion as it pertains to plaintiff's reckless investigation claim. (Docket 112 at pp. 41-49).   Defendant Fox objects to the factual and legal underpinnings of this recommendation.   (Docket 115).   In particular, he argues the magistrate judge erred in finding he violated plaintiff's substantive due process rights by recklessly investigating the circumstances of the accident and in finding plaintiff showed the right was clearly established at the time of the alleged violation.   Id. at pp. 12-18.   The court agrees with both of defendant Fox's legal arguments on the factual record articulated above, see supra Section II, and declines to settle any additional factual objections.

**A.    Reckless investigation**

"To establish a substantive due process violation, [plaintiff] must demonstrate that a fundamental right was violated and that [defendant Fox's] conduct shocks the conscience."   Folkerts v. City of Waverly, Iowa, 707 F.3d 975, 980 (8th Cir. 2013).   In a reckless investigation claim, "[i]t almost goes without saying that the liberty interest involved . . . is the interest in obtaining fair criminal proceedings[.]"   Wilson v. Lawrence Cty., 260 F.3d 946, 956 n.8 (8th Cir. 2001).

> In general, substantive due process is concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002) (internal quotation and alterations omitted). Courts are to "apply a rigorous standard" in determining whether official action shocked the conscience. Johnson v. Moody, 903 F.3d 766, 773 (8th Cir. 2018).

The United States Court of Appeals for the Eighth Circuit holds

the following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence.

Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009). However, "[a]n officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct." Id. "Even allegations of gross negligence would not rise to the level of a constitution violation." Wilson, 260 F.3d at 955.

Defendant Fox does not dispute plaintiff has a fundamental right to fair criminal proceedings. Instead, he asserts the magistrate judge erred in concluding the facts, viewed in the light most favorable to plaintiff, shock the conscience. (Docket 115 at pp. 12-14). The magistrate judge concluded plaintiff demonstrated genuine disputes of fact as to whether any witness told defendant Fox "on the day of the accident that a woman had been driving the Corvette[,]" whether he "fail[ed] to ask anyone[,] including paramedics[,] if they had opened the door" and whether he "allow[ed] Becky Feist to access the evidence within the Corvette without law enforcement oversight[.]" (Docket 112

13

at pp. 41-42).   She concluded the allegations could shock the "collective conscience of a reasonable jury[.]"   Id. at p. 46.   The magistrate judge appeared to analyze the question from a jury perspective in general, although she concluded the allegations shocked the conscience of the court.   Id. at pp. 44-46.

The magistrate judge erred in evaluating whether defendant Fox's alleged conduct shocked the conscience from the perspective of a jury.   "[T]he conscience-shocking standard is intended to limit substantive due process liability[.]"   Terrell v. Larson, 396 F.3d 975, 981 (8th Cir. 2005) (en banc).   "[I]t is an issue of law for the judge, not a question of fact for the jury."   Id. Evaluating the facts in a light most favorable to plaintiff, the court concludes that defendant Fox's alleged investigatory errors do not shock the conscience as a matter of law.

### 1.   Exculpatory eyewitness testimony

Plaintiff argues defendant Fox purposefully ignored evidence that Ms. Finley was driving the Corvette.   (Docket 89 at pp. 29-31).   He relies on habeas testimony from Mr. Eckholm and Ms. Delaney Fowler that they each told defendant Fox in some way on the day of the accident that a woman was driving the Corvette.   Id. at pp. 29-30.   Plaintiff also asserts defendant Fox never asked either Mr. Eckholm or Ms. Delaney Fowler who was driving the Corvette.   Id. at p. 30.

Even taking these factual assertions as true, plaintiff does not show defendant Fox "*purposefully* ignored evidence suggesting the defendant's

innocence." <u>Akins</u>, 588 F.3d at 1184 (emphasis added). His argument does not account for the physical evidence that would have suggested to any reasonable officer he was driving the Corvette. Ms. Finley was found in the passenger's seat while plaintiff was found lying outside the driver's side of the vehicle. (Dockets 99 at ¶¶ 3-4 & 76-9). Ms. Finley had injuries on the right side of her body consistent with sitting in a passenger's seat that was impacted by a collision. <u>Engesser II</u>, 856 N.W.2d at 473. At most, plaintiff established defendant Fox may have chosen to disregard eyewitness testimony contrary to the physical evidence. That choice does not constitute a reckless, or even negligent, failure to investigate the collision. <u>See</u> <u>Winslow v. Smith</u>, 696 F.3d 716, 734 (8th Cir. 2012) ("Defendants may not be held liable merely for . . . discounting those pieces of evidence that do not fit with the evidence at the scene of the crime.").

Plaintiff's argument to the contrary impermissibly asks the court to view defendant Fox's on-scene investigatory choices through the lens of a decade of habeas-produced exculpatory evidence. In fact, Mr. Eckholm and Ms. Delaney Fowler were listed as witnesses in defendant Fox's accident reports, which were disclosed to plaintiff's trial counsel.[11] (Docket 99 at ¶¶ 79-81). The case was nevertheless tried on the basis of physical evidence, suggesting that plaintiff and

---

[11]The fact that defendant Fox documented both Mr. Eckholm and Ms. Delaney Fowler as witnesses to the accident makes his failure to document their alleged statements that a woman was driving less troubling. Plaintiff's trial counsel could have elicited their testimony at trial, if they did in fact state to defendant Fox that a woman was driving.

defense counsel saw little value in their contrary eyewitness testimony in 2001. On the factual record as it stands now, there is much stronger eyewitness testimony suggesting Ms. Finley was driving the Corvette. But in 2000, when defendant Fox was investigating this collision, the facts were less clearly weighted in favor of Ms. Finley driving. Defendant Fox did not recklessly investigate the collision by discounting Mr. Eckholm and Ms. Delaney Fowler's on-scene statements.

### 2. Open Corvette door

Plaintiff argues defendant Fox "falsely assumed" he "flew out the driver's door" during the collision. (Docket 89 at pp. 32-33). The magistrate judge also concluded defendant Fox was reckless in assuming plaintiff was ejected from the driver's side door because that door was open when he arrived on scene. (Docket 112 at pp. 33-37). Defendant Fox responds that plaintiff was found near the driver's side of the Corvette, reasonably leading him to infer plaintiff was driving. (Docket 115 at pp. 9-10).

Defendant Fox's failure to investigate whether plaintiff's body opened the door during the collision or a third party opened the door is not reckless or negligent in light of the physical evidence on scene. Notably, Ms. Finley was found in the passenger seat of the vehicle with injuries suggesting she had been in that seat during the collision. Dockets 99 at ¶¶ 3-4 & 76-9; Engesser II, 856 N.W.2d at 473. Plaintiff was found near the driver's side door. (Dockets 99 at ¶¶ 3-4 & 76-9). In addition, the magistrate judge found the Corvette's sunroof

16

and windshield were intact, but the passenger side window was smashed out. (Docket 112 at p. 7). In viewing these facts at the scene, it was reasonable for defendant Fox to conclude plaintiff flew out the driver's side door and came to rest near the driver's side of the vehicle.

Following investigatory leads in pursuing one factual theory over another does not shock the conscience of the court. <u>Winslow</u>, 696 F.3d at 732; <u>Akins</u>, 588 F.3d at 1184; <u>Wilson</u>, 260 F.3d at 955. Defendant Fox using the open driver's side door as a piece of his theory that plaintiff was driving the Corvette was not symptomatic of a reckless investigation.

### 3. Storage of the Corvette

Plaintiff argues defendant Fox "acted recklessly by failing to secure the evidence" when he arranged for the Corvette to be stored at a local impound lot. (Docket 89 at pp. 33-35). The magistrate judge agreed, finding defendant Fox was reckless in failing to instruct the impound lot "it was, in essence, a custodian of evidence in a criminal case and that *no one* should be allowed to access the Corvette." (Docket 112 at pp. 37-39) (emphasis in original). Defendant Fox argues he did not give anyone permission to access the Corvette and the alleged spoliation of evidence was fully known to plaintiff's trial counsel, who failed to make use of it. (Docket 115 at pp. 11-12).

While defendant Fox's failure to arrange for the Corvette to be stored in a secure facility may have been negligent, even grossly negligent, there is no evidence it was reckless. At the outset, the court notes plaintiff was not indicted

until February 14, 2001—six and a half months after the collision. (Docket 99 at ¶ 71). Although defendant Fox was surely aware of the possibility plaintiff could be indicted, no party informs the court whether he, or anyone else, knew in the weeks following the collision whether an indictment was forthcoming. This uncertainty distinguishes the present case from the drug example given by the magistrate judge. (Docket 112 at p. 39). Possession of "a large amount of cocaine" is always a crime—driving a vehicle involved in a fatal collision may not be. Id. Consequently, while it may be negligent to store evidence which may or may not become relevant in a criminal case in a less secure location, the court cannot say it was reckless.

Additionally, the South Dakota Supreme Court previously held "[i]f [defendant Fox] erred in not preserving the car from the elements, such an act can only be deemed negligent" because there was no indication defendant Fox intended to destroy evidence. Engesser I, 661 N.W.2d at 755. The court previously relied on the South Dakota Supreme Court's conclusion of law regarding defendant Fox's lack of malice in storing the Corvette in dismissing part of plaintiff's complaint. (Docket 38 at pp. 24-25). The court again finds the South Dakota Supreme Court's analysis persuasive and consequently concludes defendant Fox's handling of the Corvette does not shock the conscience as a matter of law.

### 4. Conclusion

Because the court finds defendant Fox's investigatory conduct does not shock the conscience as a matter of law, it concludes he did not violate plaintiff's substantive due process rights. Defendant Fox's objection to the R&R on this point is sustained and the R&R's contrary conclusion is rejected.

### B. Qualified immunity

Defendant Fox is entitled to qualified immunity on plaintiff's reckless investigation claim because his investigation did not violate plaintiff's constitutional rights. <u>Saucier</u>, 533 U.S. at 201. While this finding is sufficient to end the inquiry, the court alternatively holds plaintiff failed to show it was clearly established in 2000 that:

1. Declining to credit testimony of two eyewitnesses over contrary physical evidence in determining who drove a vehicle involved in a homicide;

2. Failing to investigate why the driver's side door of a vehicle involved in a homicide was open when physical evidence indicated one person was driving the vehicle over another; or

3. Failing to secure a vehicle involved in a homicide from the elements and family members of the decedent when no criminal charges had yet been brought

violated his substantive due process right to be free of a reckless investigation.

At the outset, the court notes plaintiff cites no pre-2000 case law in his argument. (Docket 89 at pp. 28-29). The right must have been "clearly established at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011). Plaintiff also fails to show his right to be free of a reckless

investigation was clearly established with the requisite specificity. His response brief cites only Eighth Circuit case law stating "[e]vidence that investigators purposefully ignored evidence suggesting the defendant's innocence" can shock the judicial conscience and indicate a reckless failure to investigate. (Docket 89 at pp. 28-29) (citing <u>Winslow</u>, 696 F.3d at 732). While this general principle of law is true, it is at far too high a level of generality to clearly establish a right applicable to defendant Fox's investigation of the collision. <u>See</u> <u>Kisela</u>, 138 S. Ct. at 1152 (2018). Plaintiff also failed to show how the reckless investigation principle of law he cites is "particularized to the facts of the case" before the court. <u>Pauly</u>, 137 S. Ct. at 552. This failure is critical because binding case law establishes there is no reckless investigation where an officer elects to pursue a factual theory supported by some, but not all, available evidence.

Plaintiff's reliance on <u>White v. McKinley</u> is unavailing. (Docket 89 at pp. 26-28). In <u>White</u>, the Eighth Circuit held a law enforcement officer was not entitled to qualified immunity where he deprived the plaintiff "of a fair trial in bad faith by deliberately steering the investigation to benefit his love interest . . . . deliberately with[olding] from prosecutors the full extent of his relationship . . . and fail[ing[ to preserve the alleged victim's diary which did not corroborate the . . . allegations." 519 F.3d 806, 814 (8th Cir. 2008). The court determined the right to access exculpatory evidence outlined in <u>Brady v. Maryland</u> and <u>California v. Trombetta</u>[12] was so clearly established as to justify denying the

---

[12]467 U.S. 479 (1984).

officer qualified immunity, despite the lack of a factually similar case.   Id. at
813-14.

The present case bears little resemblance to White.   Defendant Fox did
not fail to preserve exculpatory evidence or otherwise act in bad faith.   Mr.
Eckholm and Ms. Delaney Fowler were available witnesses to plaintiff's trial
counsel.   (Docket 99 at ¶¶ 79-81).   To the extent plaintiff relies on White for its
citation to the principle that he need not cite a factually identical case to defeat
qualified immunity, the court notes White was decided in 2008.   In the years
since White was handed down, the Supreme Court has reviewed denials of
qualified immunity with increasing rigor.   See Kisela, 138 S. Ct. at 1152
(reiterating the Court's command "not to define clearly established law at a high
level of generality."); Sheehan, 135 S. Ct. at 1774 n.3 (noting "the Court often
corrects lower courts when they wrongly subject individual officers to liability"
and collecting cases between 2012 and 2014).   The court doubts whether the
Eighth Circuit would today undertake the clearly established analysis with the
same cursory, one-paragraph level of scrutiny it applied in White.   519 F.3d at
814.   The court does not question that the principle of law cited in White
survives, but concludes plaintiff would have to prove much more than he did to
successfully invoke it today.

Plaintiff bore the burden to establish that the right he alleges defendant
Fox violated was clearly established in 2000.   Estate of Walker, 881 F.3d at
1060.   He failed to meet that burden and defendant Fox is entitled to qualified

immunity.   Defendant Fox's objections to the R&R on this point are sustained and the R&R's contrary conclusion is rejected.

## V.    Plaintiff's Objections

Plaintiff objects to the magistrate judge's recommendation that summary judgment be granted to defendants on:

1.    Three subparts of his reckless investigation claim;

2.    All claims against defendant Kayras; and

3.    His conspiracy claim against all defendants.

(Docket 117 at p. 2).   Defendant Fox and Kayras filed responses to plaintiff's objections, urging the court to adopt the magistrate judge's recommendations. (Dockets 118 & 120).   The court overrules plaintiff's objections and adopts the R&R on these points.

### A.    Reckless investigation

The magistrate judge concluded plaintiff's claims that defendants Fox and Kayras failed to collect the Corvette's sun visor and any law enforcement video of the accident scene, as well as defendant Fox's supposed false testimony to the grand and petite juries during plaintiff's criminal case, did not survive summary judgment.   (Docket 112 at pp. 39-41, 49-55).   Plaintiff asks the court to consider these allegations as further evidence of his reckless investigation

claim.[13]   (Docket 117 at pp. 2-5).   The court agrees with the magistrate judge and finds these allegations baseless.

Plaintiff first asserts defendants Fox and Kayras failed to preserve the passenger side sun visor from the Corvette.   (Docket 117 at pp. 3-4).   This is not true.   The sun visor remained inside the Corvette and was examined before plaintiff's criminal trial.   (Docket 99 at ¶¶ 49, 51, 56-57).   Plaintiff's trial counsel had access to the state forensic examiner's report regarding the sun visor.   (Docket 64-2).   Plaintiff now admits neither defendant Fox nor defendant Kayras intentionally destroyed the visor before trial.   (Docket 99 at ¶ 61).   To the extent plaintiff argues defendants failed to preserve the sun visor because it was inside the Corvette at the impound lot, the court rejects this argument.   See supra Section IV.A.3.   Defendants did not recklessly investigate the collision by failing to preserve the Corvette's passenger side sun visor.

Plaintiff next argues there is "valid circumstantial evidence" that defendants Fox and Kayras "mishandled and destroyed" video of the accident scene.   (Docket 117 at p. 4).   There is no such evidence.   Plaintiff merely speculates that because there were multiple law enforcement vehicles on scene equipped with video recorders, video of the scene must exist.   Id. ("It goes

---

[13]The court originally allowed plaintiff's claims regarding the sun visor and video to proceed under Brady.   (Docket 38 at pp. 23-25).   Plaintiff nevertheless argued these claims as a part of his wider reckless investigation claim in his summary judgment briefing.   (Docket 89 at pp. 31-32, 33-35).   The magistrate judge evaluated the claims under Brady, but plaintiff again asks the court to consider them as evidence of a reckless investigation.   (Docket 112 at pp. 49-55).   The court finds plaintiff waived any reliance on Brady.   In the alternative, the court adopts the magistrate judge's Brady analysis in full.

without saying that it would be standard procedure to use" the recorders.).

"Mere speculation is insufficient to defeat summary judgment." Lacey v. Norac, Inc., 932 F.3d 657, 660 (8th Cir. 2019) (citation omitted). The magistrate judge correctly concluded plaintiff produced no evidence of any on-scene video. Defendants did not recklessly investigate the collision by failing to preserve nonexistent video.

Finally, plaintiff asserts the magistrate judge erred in concluding defendant Fox has absolute immunity for his trial and grand jury testimony. (Docket 117 at p. 5). He argues defendant Fox testified falsely to both juries and that his false testimony can "be relied upon as an additional basis for [his] reckless investigation claim." Id. However, both a trial witness and a grand jury witness have absolute immunity from § 1983 actions based on their testimony. See Rehberg v. Paulk, 566 U.S. 356, 375 (2012) (absolute immunity for grand jury witness testimony); Briscoe v. LaHue, 460 U.S. 325, 329 (1983) (absolute immunity for trial witness testimony). Plaintiff is incorrect in asserting that case law allowing reckless investigation claims to proceed subject to qualified immunity enables him to expose defendant Fox to liability for his trial and grand jury testimony.

The court overrules plaintiff's objections to the R&R's disposal of these three reckless investigation claims. The R&R is adopted in full on these points.

## B.    Claims against defendant Kayras

Plaintiff objects to the magistrate judge's conclusion that summary judgment should be granted to defendant Kayras in full.   (Docket 117 at pp. 5-9).   He asserts that defendant Kayras directly violated his constitutional rights by storing the Corvette at the impound lot.   Id. at pp. 6-7.   Plaintiff also argues defendant Kayras improperly supervised defendant Fox.   Id. at pp. 8-9. The magistrate judge found defendant Fox was primarily responsible for the alleged reckless investigation and that defendant Kayras was unaware of his problematic actions.   (Docket 112 at pp. 55-58).   The court concludes defendant Kayras cannot be liable under § 1983 because neither he nor defendant Fox violated plaintiff's constitutional rights.

"[A] supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996).   The court previously determined defendant Fox's investigation of the collision did not violate plaintiff's constitutional rights.   See supra Sections IV, V.A.   Respondeat superior § 1983 liability against defendant Kayras will not lie when his subordinate committed no constitutional violation.   Plaintiff also does not allege defendant Kayras engaged in some direct constitutional violation separate from defendant Fox's alleged violations, foreclosing the possibility of direct § 1983 liability.   Accordingly, the

court overrules plaintiff's objections and adopts the R&R as modified by this section.

### C. Conspiracy

Plaintiff objects to the magistrate judge's recommendation that his § 1983 conspiracy claim against all the surviving defendants be dismissed. (Docket 117 at pp. 9-11). He argues there is sufficient evidence defendants Fox and Kayras "conspired with each other, and others, to deprive [him] of his constitutional rights . . . in furtherance of [his] unlawful arrest and prosecution." Id. at pp. 10-11. The court finds plaintiff's conspiracy claim cannot proceed because neither the investigation nor prosecution of his criminal case violated his constitutional rights.

As plaintiff acknowledges in his objections, "a claim of civil conspiracy does not set forth an independent cause of action but rather is sustainable only after an underlying tort claim has been established[.]" Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 809 (8th Cir. 1999) (internal quotation omitted). Plaintiff must "prove a deprivation of a constitutional right or privilege to prevail on a § 1983 civil conspiracy claim." White, 519 F.3d at 814.

The court previously held neither defendant Fox nor defendant Kayras violated plaintiff's constitutional rights. See supra Sections IV, V.A-B. They cannot have conspired to violate plaintiff's constitutional rights. As a matter of law, the Meade County defendants, the only remaining parties to the conspiracy claim, cannot have conspired among themselves to violate plaintiff's

26

constitutional rights.[14]  L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo., 673 F.3d 799, 812 (8th Cir. 2012) ("[A] local government entity cannot conspire with itself through its agents acting within the scope of their employment.").

In any event, as the magistrate judge noted, plaintiff produced no evidence defendants reached any agreement to violate his constitutional rights.  (Docket 112 at pp. 58-60).  After *de novo* review of the record, the court agrees with the magistrate judge on this point.  See Reasonover v. St. Louis Cty., Mo., 447 F.3d 569, 582 (8th Cir. 2006) (Plaintiff must present "specific material facts, circumstantial or otherwise, that [defendants] formed an agreement to violate [his] constitutional rights.").  The court overrules plaintiff's objection and affirms the R&R in full on this point.

## ORDER

For the reasons given above, it is

ORDERED that plaintiff's objections to the report and recommendation (Docket 117) are overruled.

IT IS FURTHER ORDERED that defendant Edward Fox's objections to the report and recommendation (Docket 115) are sustained.

IT IS FURTHER ORDERED that the report and recommendation (Docket 112) is adopted in part and rejected in part, consistent with this order.

---

[14]Plaintiff failed to argue the magistrate judge incorrectly recommended dismissing his conspiracy claim against the Meade County defendants. Instead, his objections focus only on an alleged conspiracy between defendants Fox and Kayras.  (Docket 117 at pp. 9-11).  The court need not determine if this constitutes acceptance of the R&R as to the Meade County defendants because, as a matter of law, the conspiracy charge will not lie.

IT IS FURTHER ORDERED that the Meade County defendants' motion for summary judgment (Docket 77) is granted.

IT IS FURTHER ORDERED that defendant Edward Fox's motion for summary judgment (Docket 73) is granted.

IT IS FURTHER ORDERED that defendant Michael Kayras' motion for summary judgment (Docket 57) is granted.

IT IS FURTHER ORDERED that plaintiff's complaint (Docket 1) is dismissed.

Dated September 23, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE